**SO ORDERED: August 14, 2025.**



**James M. Carr**
**United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KAYLEE LYNNE JOHNSON, | ) | Case No. 25-00816-JMC-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| KAYLEE LYNNE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 25-50031 |
| | ) | |
| KURT TREWARTHA, as | ) | |
| Special Administrator of the Estate of | ) | |
| Joshua Ray Trewartha, deceased, | ) | |
| | ) | |
| Defendant. | ) | |

### ENTRY ON MOTION FOR JUDGMENT ON THE PLEADINGS

THIS MATTER comes before the Court on the *Motion for Judgment on the Pleadings*

filed by Kaylee Lynne Johnson ("Debtor") on May 23, 2025 (Docket No. 10) (the "Motion").

The Court, having reviewed the Motion, the *Brief in Support of Motion for Judgment on the*

*Pleadings* filed by Debtor on May 23, 2025 (Docket No. 10-1) ("Debtor's Brief"), the *Objection*

*to Motion for Judgment on the Pleadings* filed by Kurt Trewartha, as Special Administrator of

the Estate of Joshua Ray Trewartha, deceased ("Administrator"), on June 16, 2025 (Docket No. 14), the *Brief in Opposition to Motion for Judgment on the Pleadings* filed by Administrator on June 16, 2025 (Docket No. 15) ("Administrator's Brief"), the *Reply Brief in Support of Motion for Judgment on the Pleadings* filed by Debtor on June 30, 2025 (Docket No. 19), the *First Amended Complaint to Determine Dischargeability of Debt* filed by Debtor on April 10, 2025 (Docket No. 4) (the "Complaint"), and *Defendant's Answer to Plaintiff's First Amended Complaint to Determine Dischargeability of Debt* filed by Administrator on May 7, 2025 (Docket No. 7) (the "Answer"), and being otherwise duly advised, now **RULES** upon the Motion as follows:

<u>Introduction</u>

In this adversary proceeding, Debtor seeks a determination that a "wrongful death" claim asserted by Administrator is not excepted from the discharge Debtor was granted in her underlying bankruptcy case on May 28, 2025. Said another way, Debtor asks the Court to determine that Administrator's claim has been discharged in her bankruptcy case.

The procedural posture of this adversary proceeding is not typical of proceedings that creditors regularly file in this Court seeking a determination that a "claim" is excepted from discharge pursuant to Bankruptcy Code § 523.[1] The procedural posture of this proceeding varies from more typical proceedings in two very material respects: (1) Debtor, not a creditor, preemptively commenced, and is the plaintiff in, this proceeding; and (2) the applicable deadline by which Administrator must fully set forth all of the legal and factual bases for Administrator's allegedly nondischarged wrongful death "claim" has not yet expired.

Administrator filed a state court lawsuit against Debtor before Debtor commenced the

---

[1] Unless otherwise noted, all statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

underlying bankruptcy case, but Administrator's "claim", set forth in the state court complaint, may not be the final statement of Administrator's nondischargeable "claim". In a more standard proceeding commenced by a creditor seeking a determination of nondischargeability of a "claim", (1) the creditor's claim has either been reduced to judgment, in state or federal court, before the commencement of the proceeding or the creditor seeks such a judgment, fully liquidating the claim, in and as part of the proceeding; and/or (2) the creditor has filed a proof of claim in the bankruptcy case setting forth all legal and factual bases for such "claim(s)". In either scenario, the bankruptcy court makes its determination of nondischargeability in the context of a fully and finally matured claim. In this proceeding, Debtor asks the Court to make the nondischargeability determination before the "claim" has been fully and finally pled, litigated or liquidated. Debtor's request comes at a very early stage of her litigation with Administrator.

A number of circumstances have taken us critically out of the normal procedural posture. On December 12, 2024, Administrator filed a *Complaint for Wrongful Death* (the "State Court Complaint") in the Hendricks Superior Court. (A true and accurate copy of the State Court Complaint is attached as Exhibit A.) The Indiana Rules of Trial Procedure required Administrator, by the State Court Complaint, to make "a short and plain statement of the claim showing that [Administrator] is entitled to relief" from [Debtor]. Indiana Trial Rule 8(A)(1). Administrator filed the State Court Complaint before Debtor commenced her bankruptcy case on February 24, 2025.

The bankruptcy trustee appointed in Debtor's chapter 7 case determined the bankruptcy case to be a "no asset" bankruptcy case. Therefore, Administrator has not been required to file a proof of claim. Moreover, because Debtor commenced this proceeding preemptively, the period within which Administrator may commence a proceeding seeking a determination that a

particular "claim", with all elements of such "claim" fully and finally set forth, has not expired.[2]

The time within which Administrator must fully and finally set forth the legal and factual basis or bases of an allegedly nondischargeable "claim" (other than the claim set forth in the State Court Complaint) has not yet expired.  The Court may rule on the Motion as it applies to the "claim" asserted by Administrator in the State Court Complaint.  However, such a ruling will not result in the discharge of all possible additional claims that might yet be asserted by Administrator against Debtor as non-dischargeable claims.  Administrator may still have time to assert such additional claims.[3]

Various possible "constraints" (discussed below) may bar or restrict Administrator from asserting such an additional "claim" against Debtor, other than and beyond the "claim(s)" already asserted by Administrator in the State Court Complaint (potential "Additional Claims").  But, the possibility exists that Administrator may timely assert one or more such Additional Claims.  Therefore, the Court's final ruling in this proceeding has to take into account not only the "claim" asserted by the State Court Complaint, but also such possible, currently unasserted, Additional Claims.

The Court's jurisdiction to hear and finally determine any of Administrator's "wrongful death" claims is severely circumscribed, if not non-existent.  Generally, without consent of all parties, bankruptcy courts do not have jurisdiction to liquidate or otherwise determine the validity of "personal injury tort or wrongful death claims" against the bankruptcy estate.  28 U.S.C. §§ 157(b)(2)(B), (b)(2)(O) and (b)(5).  However, only this Court may determine whether any particular claim will be excepted from Debtor's bankruptcy discharge.  *See* § 523(c).  Before

---

[2]     As footnote 2 to Debtor's *Motion for Protective Order Staying Discovery* filed on May 29, 2025 (Docket No. 11), Debtor concedes "Ms. Johnson has consented to the suspension of any deadline imposed upon [Administrator] by operation of 11 U.S.C. § 523(c)."  (Bankruptcy Case Docket No. 25.)

[3]     Administrator makes this point at pp. 6-7 of Administrator's Brief.

the Court can make such a final determination, all personal injury tort / wrongful death claims in question must be liquidated by another court of competent jurisdiction.

As Administrator has pointed out, bankruptcy courts regularly modify the automatic stay of § 362 to allow plaintiffs with unliquidated personal injury tort or wrongful death claims to liquidate such claims in state court.  (*See* Administrator's Brief, pp. 2-3.)  To the extent Administrator believes that one or more Additional Claims may be asserted that would be excepted from Debtor's discharge, the Court must accommodate Administrator in asserting those Additional Claims in state court or some other court with jurisdiction to finally determine such Additional Claims.

*Undisputed Background Facts*[4]

On October 8, 2022, Debtor and her then husband, Joshua Ray Trewartha ("Joshua"), attended a friend's wedding rehearsal dinner.  Tragically, Joshua died that evening by a gunshot wound.  The Indianapolis Metropolitan Police Department investigated and determined that Joshua's death was a suicide.

Administrator's allegations of what happened on that tragic night are as follows:

[Administrator] and his wife … are the parents of Joshua Trewartha, who died at the age of 27 on October 8, 2022, after attending a friend's wedding rehearsal in Indianapolis where Joshua was to serve as a groomsman.  Debtor, then the wife of Joshua, had supplied Joshua with alcohol throughout the evening, despite being aware that Joshua was struggling with depression, for which Joshua was taking medication.  Debtor carried a firearm in her purse, which she left loaded and unsecured after showing it to other friends earlier in the evening.  At some point during the night, Joshua suffered a fatal gunshot wound to his head from Debtor's gun in the parking lot of the Airbnb they were staying.  The Indianapolis Police Department ruled the death a suicide.

(Answer, ¶ 5, p. 5.)

---

[4]    These "undisputed" facts are largely taken from the alleged facts of Debtor's Complaint in this proceeding that are admitted by Administrator's Answer.

On December 5, 2024, the Scott Circuit Court (the "Probate Court") appointed Administrator, Joshua's father, as a special administrator of Joshua's probate estate. The Probate Court appointed Administrator "pursuant to Indiana Code § 29-1-10-15 for the sole purpose of pursuing a negligence or wrongful death claim arising under Indiana Code § 34-23-1-1 against [Debtor] or any other party that may have contributed to [Joshua's] death on October 8, 2022 (i.e., treating therapists or physicians, those overserving him alcohol, etc.)." (*Order Appointing Special Administrator* (the "Probate Court Order"), Complaint, Ex. A.) Administrator filed the State Court Complaint pursuant to the authorization provided by the Probate Court Order. Administrator filed the State Court Complaint pursuant to Ind. Code § 34-23-1-1 (the "Wrongful Death Statute"), which provides in relevant part:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury … .

Section 2 of the Wrongful Death Statute (Ind. Code § 34-23-1-2) sets forth special damages provisions to be applied in a wrongful death suit regarding a deceased "adult person".

*Decision*

Debtor argues that Administrator's claim, as set forth in the State Court Complaint, is not excepted from discharge pursuant to § 523(a)(6). Administrator has not suggested that any other subsection of § 523(a) is applicable.

Section 523(a)(6) provides, in relevant part, as follows: "A discharge under section 727 … does not discharge an individual debtor for any debt … for willful and malicious injury by the debtor to another entity". The leading case authority on § 523(a)(6) (and the authority on which

Debtor relies) is *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974 (1998).  The Motion asks the

Court to determine on the basis of the pleadings and *Geiger* that Administrator's claim against

Debtor cannot be excepted from Debtor's discharge as a matter of law.

*Standard of Review*

> Courts review motions for judgment on the pleadings as follows:
>
> Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions. *See Buchanan–Moore v. Cnty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009) ("[A court] review[s] Rule 12(c) motions by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6)").  …
>
> In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1082 (7th Cir. 2008).

*Trustees of Teamsters Union Local No. 142 Pension Trust Fund v. Cathie's Cartage, Inc.*, Cause

No. 2:11-CV-374-PRC, 2013 WL 2402990 at *2-3 (N.D. Ind. May 31, 2013).  "Therefore,

viewing all of the facts in a light most favorable to the non-moving party, the … court may only

grant the motion if it is beyond doubt that the non-movant can plead no facts that would support

his claim for relief."  *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991) (internal

citations omitted).

"In a motion for judgment on the pleadings, the court considers the pleadings alone,

which consist of the complaint, the answer, and any written instruments attached as exhibits."

*Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.,* 378 F.3d 596, 600 (7th Cir.

2004) (citations omitted).  "The … court may also take judicial notice of matters of public

record."  *Wood*, 925 F.2d at 1582 (7th Cir. 1991) (citations omitted).

*The State Court Complaint Does Not Set Forth a Claim that is Excepted from Debtor's Discharge*

By the Motion, Debtor focuses on the allegations of the State Court Complaint. Debtor argues that Administrator "filed what is fundamentally a negligence complaint against [Debtor] … . Given the Supreme Court's opinion in [*Geiger*, Administrator's] lawsuit is exactly the sort of claim that cannot amount to a nondischargeable 'willful and malicious injury by [Debtor to Joshua]". (Debtor's Brief, p. 2.)

The debtor in *Geiger* was a physician, and the creditor was a former patient. The creditor/patient asserted that Dr. Geiger committed medical malpractice that resulted in the amputation of the creditor's leg. Unlike this case, the state court complaint in *Geiger* had proceeded to judgment, so that the legal and factual bases for the claim had been fully established. In the present case, the state court lawsuit is at the pleading stage, and, therefore, the legal and factual bases of the claim may not have yet been fully and finally established.

However, the Court determines that the claim as presented / asserted in the State Court Complaint does not meet the *Geiger* standard for nondischargeability under § 523(a)(6). Therefore, the claim presently asserted by Administrator in the State Court Complaint has been discharged, effective as of May 28, 2025, the date Debtor was granted a bankruptcy discharge.

*Geiger* held that a medical malpractice claim may not be excepted from discharge under § 523(a)(6). The Supreme Court focused on the (a)(6) requirement that the action or omission causing injury must be "willful". The Court established what "willful" means regarding the intention of a debtor to do harm. The creditor/patient argued that his malpractice claim against Dr. Geiger satisfied the "willful" requirement because "Dr. Geiger intentionally rendered inadequate medical care". *Geiger*, 523 U.S. at 61. *Geiger* rejected that argument, holding that § 523(a)(6) requires proof of a different kind of intentionality by the debtor. A creditor seeking

to except a claim from discharge under (a)(6) must plead and prove more than that the debtor intended the action that led to injury. The Supreme Court asked, "Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury …, or only acts done with the actual intent to cause injury … ?" *Id.* The Supreme Court held that the section requires the latter, explaining "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intention *act* that leads to injury." *Id.* (emphasis in original).

According to Debtor, the State Court Complaint asserts that Debtor acted negligently (or at worse recklessly) in proximately causing the death of Joshua. Debtor characterizes the complaint as "fundamentally a negligence complaint". (Debtor's Brief, p. 2.) Confronted by Debtor's assertion, Administrator responds:

> (1) The State Court Complaint contains in paragraph 19 an allegation of intentionality that is "not" boilerplate. (Answer, ¶ 4, p. 4.)

> (2) The controlling law of the Seventh Circuit does not require pleading and proof of "a specific intent to cause harm". (Answer, ¶ 4, p. 4.)

The Court disagrees with Administrator's response.

The Court agrees with Debtor's characterization of the State Court Complaint. First, the Court notes that the Probate Court Order authorized Administrator to pursue "a negligence or wrongful death claim arising under Indiana Code § 34-23-1-1 against [Debtor] or any other party that may have contributed to [Joshua's] death". The Probate Court Order lumps together potential claims against Debtor with other possible defendants, all of whom were thought by the Probate Court to be potentially guilty of no more than negligence or at most recklessness. The statutory cause of action created by the Wrongful Death Statute does not require pleading and proof of an intentional tort. It requires only pleading and proof of negligence.

The State Court Complaint needs only to meet a loose notice pleading standard to satisfy the Indiana Rules of Trial Procedure and "[m]alice, intent, knowledge, and other conditions of

mind may be averred generally".[5]  However, to assert an intentional tort claim, Administrator must allege, if only generally, an intention by Debtor to inflict harm to Joshua.  The State Court Complaint makes no such allegation.

Paragraph 19 of the State Court Complaint, whether it can be characterized as "boilerplate" or not, does not allege the kind of intentionality required by *Geiger*.  Paragraph 19 alleges that Debtor's "intentional … acts and/or omissions" were a "direct and proximate" cause of Joshua's injuries that lead to his death.  But that allegation is tantamount to asserting that Debtor intended her actions in the very way that the creditor/patient in *Geiger* asserted that Dr. Geiger intended his actions (and/or omissions) that led to the patient's amputation.  To meet the *Geiger* standard, Administrator needs to allege more:  Administrator would need to allege (and prove) that Debtor intended to harm Joshua and her intentional acts caused his death. Administrator needs to plead and prove an intentional tort to meet the *Geiger* standard.  The State Court Complaint does not make any such allegation.

Moreover, whatever *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767 (7th Cir. 2013) and its Seventh Circuit predecessors may hold, *Geiger* controls, and *Geiger* requires pleading and proof of an intention to harm.  Administrator suggests that the Seventh Circuit requires allegations only sounding like reckless behavior.  The bottom line from *Geiger* is "debts arising from recklessly or negligently inflicted injuries do not fall with the compass of § 523(a)(6)." *Geiger* 523 U.S. at 64.  *See also Watson v. Bradsher (In re Watson)*, -- F.4th --, No. 24-11389, 2025 WL 2205853 (11th Cir. Aug. 4, 2025).

---

[5]     Indiana Trial Rule 9(B).

*Possible Additional Claims and Constraints*

As noted earlier, Debtor, by commencing this proceeding, made a preemptive attack on any action that Administrator might take to seek a determination of nondischargeability. As part of the relief sought in this proceeding, Debtor asks the Court to determine that the claim asserted by the State Court Complaint has been discharged. As explained above, the Court agrees with Debtor on that point. However, Debtor goes beyond that to ask the Court to determine that there can be no possible claim (above and beyond the allegations of the State Court Complaint) that Administrator could still timely assert that could be excepted from Debtor's discharge. The Court disagrees with that assertion.

The automatic stay that arose from Debtor's filing the underlying bankruptcy case has prevented Administrator from seeking to amend the State Court Complaint to assert an intentional tort claim against Debtor that would meet the *Geiger* standard (a "*Geiger* Claim").[6] If Administrator can assert such a *Geiger* Claim and wishes to do so, the automatic stay should be modified to allow him to do so. However, there may exist several "constraints" to Administrator's ability to assert such a *Geiger* Claim. The Court has identified the following possible constraints:

(1) Statute of limitations – the Indiana Wrongful Death Statute provides a two-year statute of limitations. Presumably, any potentially nondischargeable *Geiger* Claim would need to be asserted in the action commenced by the State Court Complaint. Debtor filed her bankruptcy case on February 24, 2025. That filing had the effect of suspending the running of the statute of limitations until 30 days after termination of the automatic stay. *See* § 108(c).

---

[6]    Of course, when Administrator sought authorization from the Probate Court and filed the lawsuit in Hendricks County, Debtor had not yet filed her bankruptcy case, and Administrator was not required to meet the higher burden to establish a *Geiger* Claim to proceed.

However, the bankruptcy petition date was over two years and four months after Joshua's death.

(2)    Administrator's authority – Administrator may only act by the authority granted to him by the Probate Court.  The State Court Complaint was filed pursuant to the Probate Court Order, that provides:

> [Administrator] is appointed as a Special Administrator pursuant to Indiana Code § 29-1-10-15 for the sole purpose of pursuing a negligence or wrongful death claim arising under Indiana Code § 34-23-1-1 against [Debtor] or any other party that may have contributed to [Joshua's] death on October 8, 2022 (i.e., treating therapists or physicians, those overserving him alcohol, etc.).  <u>The Court finds that there is a colorable basis to pursue such claims against [Debtor] and authorizes said action.</u>

(Emphasis added.)  This Court does not make any determination as to whether the Probate Court Order would authorize Administrator to amend the State Court Complaint to assert a *Geiger* Claim.  Whether the existing Probate Court Order authorizes the assertion of an intentional tort claim and whether and under what circumstances the Hendricks Superior Court might allow for an amendment to the State Court Complaint to allow such a *Geiger* Claim to be added are questions beyond this Court's purview.  The Court notes that the Probate Court Order determined that there is a "colorable basis" for Administrator to pursue the "wrongful death claim".  The Court will not weigh in as to whether the Probate Court first needs to conduct another hearing and make another such finding that there is "a colorable basis" for an intentional tort claim before that court authorizes the Administrator to assert a *Geiger* Claim.

(3)    Rule 11 – Indiana Trial Rule 11(A) requires that an attorney must certify that there is good legal and factual ground to support any *Geiger* Claim that Administrator might choose to assert.

<u>Modification of the Automatic Stay</u>

On March 4, 2025, Administrator filed a motion (the "Stay Motion") asking the Court to modify the stay of § 362(a) to allow him to proceed to liquidate his claim against Debtor in the

Hendricks Superior Court.  The Court held two hearings and asked for further briefing with respect to the Stay Motion.  By separate order entered in the underlying bankruptcy case, the Court will now partially grant the Stay Motion to modify the stay to allow Administrator to (1) seek any further authority that may be required from the Probate Court to amend the State Court Complaint to assert one or more *Geiger* Claims; and (2) to the extent Administrator is so authorized, ask the permission of the Hendricks Superior Court to amend the State Court Complaint to assert any such *Geiger* Claim.[7]  If such permission is granted and Administrator does amend the State Court Complaint to assert a *Geiger* Claim, the Administrator may then proceed to fully prosecute and liquidate such claim in the Hendricks Superior Court.  If Debtor believes that any Additional Claim that Administrator may seek to assert to meet the *Geiger* standard does not pass muster but has been discharged in the underlying bankruptcy case, Debtor may return to this Court for a determination of the nondischargeability of any Additional Claim Administrator may seek to assert as a *Geiger* Claim.

*Conclusion*

For the reasons described above, the Motion is GRANTED (at least in part). Contemporaneously herewith, the Court will enter a partial judgment in favor of Debtor.

The Court will hold a telephonic status conference on **November 17, 2025 at 10:00 a.m. EST**.  To participate, the parties should call (571) 353-2301, meeting ID 734120790.

IT IS SO ORDERED.

# # #

---

[7]    The Court will enter an order in the underlying bankruptcy case to this effect.

# EXHIBIT A

Case 25-50031     Doc 22     Filed 03/24/25     Entered 03/24/25 15:22:48     Pg 15 of 20

32D01-2412-CT-000226
Hendricks Superior Court 1

Filed: 12/12/2024 3:31 PM
Clerk
Hendricks County, Indiana

STATE OF INDIANA   )   IN THE HENDRICKS <sup>CIRCUIT</sup>/<sub>SUPERIOR</sub> COURT
          ) SS:
COUNTY OF HENDRICKS  )   CAUSE NO. 32_____-2412-CT-_____

KURT TREWARTHA, *as Special*  )
*Administrator of the Estate of*   )
JOSHUA RAY TREWARTHA,   )
deceased,           )
            )
    Plaintiff,     )
            )
v.           )   **JURY TRIAL DEMANDED**
            )
KAYLEE JOHNSON,     )
            )
    Defendant.    )

## <u>COMPLAINT FOR WRONGFUL DEATH</u>

Plaintiff, Kurt Trewartha, as Special Administrator of the Estate of Joshua Ray Trewartha, deceased, by counsel, for his Complaint for Wrongful Death, alleges and states the following:

1.  The decedent, Joshua Ray Trewartha ("**Joshua**"), was the beloved son of Kurt and Sue Trewartha.

2.  Joshua died on October 8, 2022, in Marion County, Indiana, at the age of 27.

3.  Defendant, Kaylee Johnson (formerly Kaylee Trewartha) ("**Kaylee**"), is a resident of Hendricks County.

4.  Kaylee and Joshua married on November 6, 2021, and were husband and wife at the time of Joshua's untimely death.

5.  Plaintiff, Kurt Trewartha, is a resident of Marion County. The Scott Circuit Court appointed Kurt Trewartha as Special Administrator of the Estate of Joshua Ray Trewartha for the purpose of pursuing a wrongful death or negligence action against Kaylee Johnson, explicitly finding "a colorable basis" to pursue such an action. (<span style="font-variant: small-caps;">Exhibit A</span> attached hereto is a true and

accurate copy of the *Order Appointing Special Administrator* under cause number 72C01-2409-ES-10.)

6.      On Friday, October 7, 2022, Joshua and Kaylee attended a friend's wedding rehearsal dinner together in Indianapolis.

7.      Prior to the dinner, Kaylee purchased alcohol that she brought to an Airbnb in Indianapolis she and Joshua had rented for the night.

8.      Throughout the evening, both before and after the rehearsal dinner, Joshua drank alcohol provided by Kaylee, including hard liquor.

9.      Joshua struggled with depression and / or anxiety at times, and medical professionals had prescribed Joshua medication to address these conditions.

10.      Earlier that day, Kaylee had asked Joshua if he was depressed and wanted to harm himself.

11.      Joshua was taking medication for depression / anxiety, and said medication has adverse interactions with alcohol, including suicidal ideation.

12.      Nevertheless, Kaylee supplied Joshua with significant amounts of alcohol throughout the evening of October 7, 2022.

13.      Later in the evening, Joshua and Kaylee returned to the Airbnb along with some friends.

14.      Joshua was intoxicated and went to bed in the bedroom.

15.      Kaylee stayed up with friends, and decided to remove a handgun she carried in her purse, took the clip out along with each of the bullets one by one, and encouraged a friend to handle the gun, clip, and bullets. Kaylee then reloaded the gun and placed it back in her purse.

16.     Kaylee made no meaningful effort to secure the handgun, remove the bullets, or ensure it was inaccessible by Joshua, despite her knowledge that Joshua was under the influence of alcohol, may be on medication for anxiety or depression, and Kaylee had just a few hours earlier asked if Joshua intended to harm itself.

17.     On information and belief, Kaylee did not comply with the rules and regulations for possessing a firearm on Airbnb property.

18.     Kaylee's failure to responsibly secure the firearm created an unreasonable and entirely preventable risk of harm to Joshua, particularly given his mental health condition and impaired state.

19.     In the early hours of October 8, 2022, as the direct and proximate result of Kaylee's intentional, reckless, and/or negligent acts and/or omissions, Joshua suffered a fatal gunshot wound to the head in the parking lot of the Airbnb from the handgun Kaylee owned. Kaylee's purse was lying next to Joshua's body.

20.     The Indianapolis Police Department and coroner ruled Joshua's death a suicide.

21.     Upon information and belief, Kaylee was the last person to have custody and control over her handgun prior to Joshua's death.

22.     Kaylee owed Joshua a duty of care as his spouse, particularly in light of his known mental health condition and the heightened risks posed by alcohol and an unsecured firearm.

23.     Kaylee breached the duty of care she owed Joshua by supplying alcohol to Joshua despite knowing his history of mental illness and taking medication to treat it, her concern a few hours earlier that Joshua might harm himself, and failing to secure a loaded weapon in her possession, creating a foreseeable risk of harm.

3

24.     In the immediate aftermath of Joshua's death, Kaylee provided inconsistent accounts of the events surrounding Joshua's death.

25.     Then, a few weeks after Joshua's death, Kaylee stopped communicating entirely with Joshua's parents, despite Kurt Trewartha's requests for additional information about what happened the night of Joshua's death.

26.     Kaylee's evasive behavior and contradictory statements has deepened the anguish of Joshua's parents, depriving them of accurate information about the circumstances leading to their son's death.

27.     Kaylee's negligence and wrongful acts as described herein was the direct and proximate cause of Joshua's death.

28.     At the time of his death, Joshua was suffering from mental illness (exacerbated by alcohol and prescription drugs) so severe that he could not direct his conduct. Thus, Joshua's death was not a voluntary or willful act.

29.     By reason of Joshua's death, Plaintiff has been deprived of Joshua's support, care, love and affection, and has been damaged in an amount to be proven at trial.

30.     In addition, Joshua's estate has incurred economic loss, and funeral and burial expenses paid for by the Trewarthas. Pursuant to Ind. Code § 34-23-1-1, Kaylee is liable for all damages permissible by law, including attorneys' fees and other costs associated with prosecuting this action.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kurt Trewartha, as Special Administrator of the Estate of Joshua Ray Trewartha, deceased, respectfully requests that this Court enter judgment in his favor and against Defendant, Kaylee Johnson, for:

        (a)  all actual and compensatory damages established by the evidence;
        (b)  funeral and burial expenses;
        (c)  loss of support, care, love and affection;
        (d)  any other damages available at law;
        (e)  attorneys' fees and costs; and
        (f)  all other proper relief.

Dated: <u>December 12, 2024</u>               Respectfully submitted,

                                           */s/ Paul D. Vink*
                                           Paul D. Vink (#23785-32)
                                           Dakota C. Slaughter (#37582-29)
                                           Bose McKinney & Evans LLP
                                           111 Monument Circle, Suite 2700
                                           Indianapolis, IN 46204
                                           (317) 684-5000
                                           pvink@boselaw.com
                                           dslaughter@boselaw.com

                                         *Attorneys for Plaintiff*

STATE OF INDIANA      )      IN THE SCOTT COUNTY CIRCUIT COURT
      ) SS:
COUNTY OF SCOTT      )      CAUSE NO. 72C01-2409-ES-000010


IN THE MATTER OF THE ESTATE OF      )
      )
JOSHUA RAY TREWARTHA, DECEASED.      )

## <u>ORDER APPOINTING SPECIAL ADMINISTRATOR</u>

This matter is before the Court on a *Petition to Appoint Administrator for the Sole Purpose of Collecting Damages for Negligence or Wrongful Death* filed by Petitioner, Kurt Trewartha. The Court, having reviewed the briefing and heard oral argument on December 3, 2024, and being duly advised, now finds that said Petition should be, and hereby is, **GRANTED.**

**IT IS, THEREFORE, ORDERED** that Kurt Trewartha is appointed as a Special Administrator pursuant to Indiana Code § 29-1-10-15 for the sole purpose of pursuing a negligence or wrongful death claim arising under Indiana Code § 34-23-1-1 against Kaylee Johnson or any other party that may have contributed to Joshua Trewartha's death on October 8, 2022 (i.e., treating therapists or physicians, those overserving him alcohol, etc.). The Court finds that there is a colorable basis to pursue such claims against Ms. Johnson and authorizes said action.


SO ORDERED: <u>   **December 5, 2024**   </u>

<u>                      </u>
           JUDGE, SCOTT COUNTY CIRCUIT COURT

DISTRIBUTION TO COUNSEL OF RECORD VIA IEFS


4896048

**Exhibit A**